UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PULSEFORGE, INC., f/k/a NovaCentrix, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  4:25-CV-01343-ACL |
| | ) | |
| vs. | ) | |
| | ) | |
| BREWER SCIENCE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff PulseForge, Inc. ("PulseForge") brings this action against Defendant Brewer Science, Inc. ("Brewer") to enforce an arbitration agreement pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4.

Presently pending before the Court are the following motions: Defendant's Motion to Dismiss (Doc. 10), Defendant's Motion for Preliminary Injunction (Doc. 12), and Plaintiff's Motion to Compel Arbitration and Stay All Proceedings (Doc. 21).  These motions are fully briefed and ready for disposition.  For the reasons set forth below, the Court will grant Plaintiff's motion to compel arbitration and deny Defendant's motions.

### I.    Procedural Background

Plaintiff filed its initial Complaint on September 8, 2025.  (Doc. 1.)  The Complaint alleges that Plaintiff and Defendant are parties to a nondisclosure agreement ("Agreement"), which requires that all disputes be resolved by binding arbitration administered by the American Arbitration Association ("AAA") and in accordance with the AAA's Commercial Arbitration

Rules.  The Complaint states that Plaintiff, a Delaware corporation with its principal place of business in Austin, Texas, is the "successor company" to NovaCentrix ("NCC").  (Doc. 1 at 1.)  Defendant is a Missouri corporation.  Plaintiff seeks to pursue arbitration with Defendant pursuant to the Agreement, but Defendant refuses.  Plaintiff therefore seeks an order compelling arbitration.

On October 9, 2025, Defendant filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted.  Defendant argues that Plaintiff PulseForge seeks to compel Defendant Brewer into binding arbitration in connection with alleged breaches of the Agreement, but PulseForge is not a party to the Agreement, a third-party beneficiary, or a proper assignee.  Instead, Defendant argues that the Agreement was entered into by Brewer *and NCC*.  Defendant contends that PulseForge is, therefore, without standing to enforce the Agreement's arbitration provisions.

On the same date, Defendant filed a Motion for Preliminary Injunction enjoining Plaintiff PulseForge from pursing arbitration proceedings against Brewer.

On October 30, 2025, Plaintiff filed an Amended Complaint.  (Doc. 18).  The Amended Complaint provides additional allegations regarding how PulseForge came into existence and the relationship between PulseForge and NCC, as will be set out below.  Plaintiff argues that Defendant's Motion to Dismiss is mooted by the filing of the Amended Complaint.

Plaintiff also filed the instant Motion to Compel Arbitration and Stay All Proceedings on October 30, 2025.

The Court held a telephone status conference on December 3, 2025, during which the parties each presented argument regarding the pending motions.  The Court tentatively scheduled

an evidentiary hearing on Defendant's Motion for Preliminary Injunction for January 28, 2026, if the Court determined a hearing was necessary.

Plaintiff—with leave of Court—completed its briefing of the pending motions after the status conference, on December 4, 2025.  (Docs. 34, 35.)

## II.    Factual Background[1]

The parties' dispute relates to the following nondisclosure agreements: the Mutual Confidentiality Agreement dated May 16, 2017 ("Original NDA" or "2017 NDA"); and the Extension and First Amendment of Mutual Confidentiality Agreement dated March 6, 2020 ("Extension") (collectively "Agreement").  Both the Original NDA and the Extension were signed by Brewer and by NCC.

Plaintiff alleges that the language of the original NDA and the Extension governs here, because Plaintiff sustained its injuries in or around October 2020 and additional injuries in or around October 2021.

The Original NDA states as follows:

**11. Dispute Resolution** – The parties shall first attempt to resolve, through good faith negotiations, any dispute regarding this Agreement.  Failing that, the parties may select a mediator to assist them in resolving conflicts at a location mutually agreeable to the parties.  Fees directly related to the selected mediator shall be divided equally between the parties.  If the dispute regarding this Agreement still cannot be resolved, any dispute regarding this Agreement, or any damages associated with its breach, shall be decided by binding arbitration before a single arbitrator and administered by the American Arbitration Association (AAA) in accordance with its Commercial Arbitration Rules then in effect.  Any decision of the arbitrator shall be final and may be enforced by any judicial court having jurisdiction over the parties.  The place of arbitration shall be a neutral site agreed

---

[1] The facts recited in this section are taken solely from the Amended Complaint.  (Doc. 18.)

upon by the parties.  If the parties cannot agree upon a site, the place of arbitration shall be Dallas, Texas, U.S.A.

(Doc. 18 at 3.)  The Original NDA further states as follows:

> **15.  Choice of Law**—This Agreement shall be construed and governed by the laws of the State of Missouri, U.S.A., excluding its body of law controlling conflicts of laws.

*Id.*

On January 4, 2022, NCC went through a "divisive merger," a Texas statutory process by which a company may divide some of its assets into a separate company that has common ownership with the original company.  Plaintiff alleges that a divisive merger is not an assignment of intellectual property or other property pursuant to Texas law, citing Tex. Bus. Orgs. Code Ann. § 10.008.

Plaintiff states that, through the January 4, 2022 divisive merger, PulseForge "came into existence as a former part of NCC."  *Id.* at 2.  PulseForge "became the owner of NCC's relevant technology as well as NCC's nondisclosure agreements, which included the Original NDA…" *Id.*

Plaintiff alleges that Defendant has committed acts that constitute breach of the Original NDA and Extension and trade secret misappropriation against Plaintiff.  Specifically, Plaintiff alleges that Defendant "wrongfully misused and disclosed Confidential Information (as defined in the Original NDA) it received from PulseForge in separate wrongful acts in 2020 and 2021." *Id.* at 3-4.

Plaintiff's counsel sent a letter via email and Federal Express to Defendant on September 4, 2025, requesting that Defendant consent to arbitration by September 8, 2025.  Defendant did not reply to the letter by September 8, 2025, and has refused to consent to arbitration.

Plaintiff asserts a sole claim for relief—under the Federal Arbitration Act—alleging that Plaintiff and Defendant are currently involved in a dispute concerning Defendant's wrongful misuse and disclosure of information it received from Plaintiff pursuant to the Original NDA. Plaintiff states that, in other words: (1) a valid agreement to arbitrate exists; and (2) the instant dispute falls within the scope of that arbitration provision.  Plaintiff seeks an order compelling Defendant to arbitrate.

## III.    Discussion

As an initial matter, the undersigned agrees with Plaintiff that Defendant's Motion to Dismiss is mooted by the filing of the Amended Complaint.  An amended Complaint generally renders moot a pending motion to dismiss the original Complaint.  *See In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) ("It is well established that an amended complaint super[s]edes an original complaint and renders the original complaint without legal effect.") (citation omitted).  Plaintiff filed the Amended Complaint within 15 days of service of Defendant's Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).  In response, Defendant filed an Answer, rather than a renewed motion to dismiss.  (Doc. 28.)  Thus, Defendant's motion to dismiss the original Complaint is found moot.

Plaintiff also contends that Defendant's Motion for Preliminary Injunction is moot, in light of the filing of the Amended Complaint.  Defendant argues that its Motion is not moot,

because Brewer's motion for preliminary injunction seeks relief from being compelled into arbitration and the harm to Brewer and the relief it seeks are no different under the Amended Complaint than they were under the initial Complaint. In the alternative, Defendant requests that the Court either consider Brewer's motion as being addressed to the Amended Complaint or that the Court allow Brewer to file a renewed motion for preliminary injunction.

Because an amended complaint supersedes an original complaint and renders the original complaint without legal effect as discussed above, "[c]ourts have concluded that where an amended complaint has been filed, an existing motion for preliminary injunction should be dismissed without prejudice." *Miles v. Johnston*, 0:24-cv-01012, 2024 WL 5318973, at *6 (D. Minn. Dec. 18, 2024). Here, the relief requested in Defendant's Motion is equally applicable to the Amended Complaint. In the interest of judicial economy, rather than require Defendant to file a renewed motion, the Court will construe Defendant's Motion for Preliminary Injunction as being directed to the Amended Complaint.

### A. Defendant's Motion for Preliminary Injunction

Defendant requests that the Court enter a preliminary injunction enjoining PulseForge from pursuing arbitration proceedings against Brewer. Defendant argues that PulseForge is not a party to the Agreement, nor is it a third-party beneficiary or assignee of the Agreement. Because Brewer never agreed to arbitrate its disputes with PulseForge, Defendant argues that Brewer is likely to succeed on the merits of its claim that it cannot be compelled to arbitrate this dispute. Defendant further argues that Brewer would suffer irreparable harm if it were forced to expend time and resources arbitrating a dispute it has not agreed to arbitrate. In support of its Motion, Defendant has attached the Affidavit of Kimberly Yess, currently employed as a Corporate

Fellow with Brewer, and previously employed as an Executive Director for Brewer.  (Doc. 13-1.) Ms. Brewer provides testimony regarding the Agreements at issue, the divisional merger, and the parties' underlying dispute.

In Response, Plaintiff argues that the Motion should be denied because PulseForge is the successor in interest to NCC, the signatory on the 2017 NDA.  Plaintiff contends that Defendant has failed to demonstrate a probability of success on the merits and to prove irreparable harm.

Defendant, in its Reply, argues that the evidence PulseForge proffers to show that it succeeded to NCC's rights under the Agreement as part of the divisive merger is "ambiguous at best." (Doc. 29 at 2.)  Defendant requests that, at a minimum, the Court should "enjoin PulseForge from pursuing arbitration to preserve the status quo while Brewer takes discovery on the factual question of which NCC assets were transferred to PulseForge and which remained with NCC under the merger." *Id.*  Defendant next argues that, under Missouri law—which governs the Agreement –the change in corporate structure from NCC to PulseForge constitutes an assignment in violation of the Agreement's anti-assignment clause.  Defendant submits new facts as well as the Declaration of its General Counsel, Rebecca Rich.  (Doc. 29-1.)

 The Court held a status conference at the request of the parties on December 3, 2025. During the conference, counsel for Defendant requested that the Court hold an evidentiary hearing on its Motion for Preliminary Injunction.  Counsel represented that pre-hearing discovery would be unnecessary, and that the only witnesses would be the individuals who submitted sworn declarations in the briefing.  Counsel for Plaintiff argued that an evidentiary hearing was not necessary, as all of the evidence necessary to resolve Defendant's Motion is already before the Court.

In its Sur-Reply, Plaintiff argues that the Court should deny the Motion for Preliminary Injunction, stay the case, and compel the parties to arbitrate. (Doc. 34.) Plaintiff notes that the FAA codifies a strong public policy favoring the enforcement of arbitration agreements. Plaintiff argues that the Plan of Merger and the testimony of Jonathan Gibson—a senior executive at both NCC and PulseForge—confirms that the Agreement was allocated to PulseForge.

The Court finds that the parties have had the opportunity to adequately develop the factual record on the motion for preliminary injunction, and the Court will determine the motion on the briefs and evidence in the record without hearing. *See* Fed. R. Civ. P. 78(b); *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 744 (8th Cir. 2002) ("An evidentiary hearing is required prior to issuing a preliminary injunction only when a material factual controversy exists." (citing *Movie Sys., Inc. v. MAD Minneapolis Audio Distribs.*, 717 F.2d 427, 432 (8th Cir. 1983)).

**Legal Standards**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1342 (8th Cir. 2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). "Its "primary function...is to preserve the *status quo* until, upon final hearing, a court may grant full, effective relief."" *Id.* (quoting *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir. 1984)).

In determining whether to issue preliminary injunctive relief, this Court considers the following factors: (1) the probability that the movant will succeed on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting

the injunction will inflict on the nonmovant; and (4) the public interest.  *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)).  The inquiry is "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the *status quo* until the merits are determined."  *Dataphase Systems, Inc.*, 640 F.2d at 113.

The likelihood of success is the most important factor.  *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011).  This factor directs courts to ask whether the party requesting a preliminary injunction has a "fair chance of prevailing."  *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc). However, even when a plaintiff has a strong claim on the merits, "[f]ailure to demonstrate irreparable harm is a sufficient ground to deny a preliminary injunction."  *Phyllis Schlafly Revocable Tr. v. Cori*, 924 F.3d 1004, 1009 (8th Cir. 2019) (quoted case omitted).  "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages."  *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009).  The moving party bears the burden to establish the need for injunctive relief.  *Chlorine Inst., Inc. v. Soo Line R.R.*, 792 F.3d 903, 914 (8th Cir. 2015).

**<u>Defendant's Motion</u>**

Defendant does not argue the validity or applicability of the Agreement to Plaintiff's claims.  Rather, Defendant argues that PulseForge has no standing to enforce the Agreement against Brewer because PulseForge is not a signatory to, third-party beneficiary of, or permitted assignee of the Agreement.  Defendant contends that Brewer is likely to succeed on the merits of

its claim that it cannot be compelled to arbitrate its dispute with PulseForge because it never agreed to arbitrate such disputes.

Plaintiff responds that Defendant has not demonstrated a likelihood of success on the merits, because its argument is predicated on the false assumption that PulseForge is not the successor in interest to NCC. Plaintiff contends that, because PulseForge is the successor in interest to NCC and no assignment has taken place, PulseForge has standing to enforce its rights under the Agreement.

### *Evidence Submitted by Plaintiff*

Plaintiff has submitted the Declaration of Jonathan Gibson, Chairman of the Board of Directors, President, and Chief Operating Officer of PulseForge; and Vice President of NCC. (Doc. 23.) Mr. Gibson testified that, in addition to the Agreement and Extension referenced above, NCC and Brewer entered into a subsequent Mutual Non-Disclosure Agreement on February 28, 2023 ("2023 NDA"). (Doc. 23 at 2; Doc. 23-3.) The 2023 NDA only applies to information exchanged thereunder. *Id.* Mr. Gibson testified that the 2017 NDA applies to the parties' dispute concerning Brewer's alleged wrongful disclosure of PulseForge's Confidential Information because the Confidential Information at issue was exchanged under that Agreement, and prior to February 2023. (Doc. 23 at 2; 23-1 at 1.)

Mr. Gibson testified that PulseForge is the "successor in interest to and a continuation of NCC." (Doc. 23 at 2.) He stated that NCC "became PulseForge" through the Texas statutory process known as a divisive merger on January 4, 2022. *Id.* at 3. Defendant has attached a copy of the Agreement and Plan of Merger memorializing the divisive merger. (Doc. 23-4.) Mr.

Gibson stated that he had reviewed the Plan of Merger and was familiar with its contents.  (Doc. 23 at 3.)

Mr. Gibson testified that, pursuant to the Plan of Merger, NCC split into two entities: (1) NCC Nano, LLC ("New NCC"); and (2) PulseForge.  *Id.*  The Plan of Merger divides the assets of NCC between New NCC and PulseForge.  *Id.*  In particular, the Plan of Merger states as follows:

> All of the rights, assets, and properties of NCC described in Schedule I attached hereto (collectively, the "PFI Assets") shall be allocated to, possessed by, and vested in PFI without reversion or impairment, without further act or deed…without transfer or assignment having occurred.

(Doc. 23-4 at 3.)  In other words, pursuant to the Plan of Merger, the NCC assets listed on Schedule I would be allocated to PulseForge.  (Doc. 23 at 3.)  Schedule I, in turn, refers to a corresponding spreadsheet.  (Doc. 23 at 3; Doc. 23-5.)  Plaintiff has attached Schedule I and the corresponding spreadsheet.  (Doc. 23-5.)  Mr. Gibson testified that he has reviewed Schedule I and is familiar with its contents.  (Doc. 23 at 3.)

Mr. Gibson testified that Schedule I allocates to PulseForge (1) the technology constituting the Confidential Information at issue in this case; and (2) the non-disclosure agreements relating to the same, including the 2017 NDA and the Extension.  *Id.*  In support, Mr. Gibson cites the Plan of Merger provision allocating "all PulseForge related research and development information" as well as all "NDAs, MOUs, [and] Purchasing Agreement" to PulseForge.  (Doc. 23-4 at 3; Doc. 23-5 at 3.)  Finally, Mr. Gibson testified that the Confidential Information at issue in this case, which was exchanged under the 2017 NDA, relates to PulseForge's business.  (Doc. 23 at 3.)

***Evidence Submitted by Defendant***

Defendant submits the Declaration of its General Counsel, Rebecca Rich.  (Doc. 29-1.)

Ms. Rich states that the Agreement entered into by Brewer and NCC provides as follows

regarding the ability of the parties to assign the Agreement:

> **10.  Assignment**—This Agreement may not be assigned without the prior written
> consent of both parties.  All unauthorized assignments shall be void.

(Doc. 29-1 at 3, 10.)  Ms. Rich notes that the Agreement also contains the following choice of

law provision:

> **15.  Choice of Law**—This Agreement shall be construed and governed by the
> laws of the State of Missouri, U.S.A., excluding its body of law controlling
> conflicts of laws.

(Doc. 29-1 at 3, 11.)

Ms. Rich provides extensive testimony regarding the nature of Brewer and NCC's

business relationship, including the development of technology, patent applications, and the

usage of confidential information that is the subject of the underlying dispute.  (Doc. 29-1 at 4-

6.)  Ms. Rich states that Brewer learned that NCC "had spun out Plaintiff PulseForge, Inc. in

January 2022 as a new company."  *Id.* at 6.   Ms. Rich then relays discussions between Brewer,

NCC, and PulseForge occurring between January 2022 and October 2022.  *Id.*

***Analysis***

The evidence before the Court is sufficient to determine the sole issue before the Court:

Whether PulseForge is the successor in interest to NCC.  At the status conference, Defendant's

counsel conceded that pre-hearing discovery *was not necessary* and represented that the only

witnesses who would testify at a hearing were Mr. Gibson and Ms. Rich.  Defendant's counsel

argued that the merger documents are ambiguous because the term "NDA" is not defined.

Plaintiff responds that, even if ambiguities regarding the merger documents exist, those ambiguities can be resolved by determining the intentions of the parties: PulseForge and NCC. Because PulseForge has submitted the declaration of Mr. Gibson, an executive with PulseForge *and* NCC, Plaintiff argues that the record before the Court is sufficient to resolve this issue. The undersigned agrees.

### 1.  Is PulseForge the Successor in Interest to NCC?

The evidence in the record establishes that the Agreement was allocated to PulseForge as part of the divisive merger and that PulseForge is the successor in interest to NCC. The merger documents reveal that PulseForge was created through the divisive merger of NCC. (Docs. 23-4, 23-5.)  Defendant acknowledges that NCC "had spun out [Plaintiff] PulseForge, [Inc.,] as a new company."  (Doc. 29 at 6.)  The Plan of Merger states that "[a]ll of the rights, assets, and properties *of NCC described in Schedule I* attached hereto…shall be allocated to, possessed by, and vested in [PulseForge][.]"  (Doc. 23-4 at 3, emphasis added.)  Schedule I lists as PulseForge assets, the "contracts and agreements" referenced on the spreadsheet attached thereto.  (Doc. 23-5 at 2.)  The spreadsheet, in turn, states that PulseForge "assets will include all PulseForge…NDAs," *id.* at 3, which were *previously* NCC's assets.  The Agreement restricts the disclosure of information exchanged between the parties.  As such, it is a non-disclosure agreement or "NDA."

To the extent there is any ambiguity regarding whether the Agreement is an "NDA" under the merger documents, the testimony of Mr. Gibson resolves this issue.  *See  Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO, Council 61 v. State*, 653 S.W.3d 111, 127 (Mo. banc 2022) (quotation omitted) ("The cardinal rule in the interpretation of a contract is to ascertain the

intention of the parties and give effect to that intention.").  Mr. Gibson—an executive with both PulseForge *and* NCC—testified that the Plan of Merger allocated the technology constituting the Confidential Information at issue in this case and the Agreement to PulseForge.  (Doc. 23 at 3.) The testimony of Ms. Rich offered by Defendant is not relevant to the issue of whether PulseForge is the successor in interest to NCC, as Ms. Rich is not associated with either entity. In fact, the majority of Ms. Rich's testimony relates to the merits of the underlying dispute which has no relevance to the pending motions.  Thus, the undisputed facts establish that the Agreement was allocated to PulseForge in the divisive merger.

### 2.  Was the Divisive Merger an Assignment?

Defendant next argues that Missouri law rather than Texas law governs the divisive Merger; and, under Missouri law, the divisive merger constitutes an impermissible assignment in violation of the Agreement's anti-assignment clause.

Plaintiff responds that Texas law governs the divisive merger.  Plaintiff contends that, even if Missouri law applied, the divisive merger does not constitute a prohibited assignment under Missouri law.

As cited above, the Agreement's choice of law provision provides that *the Agreement* be "construed and governed by the laws of the State of Missouri…"  (Doc. 29-1 at 11.)  Plaintiff argues that it is black letter law that the legal effect *of a merger* is governed by the law of the state *under which the merger was effectuated*.  Because the divisive merger at issue here was effectuated under Texas law, Plaintiff argues that Texas law governs the effect of the merger. Plaintiff further notes that the Plan of Merger contains a Texas choice-of-law provision stating

that "all of the actions and transactions contemplated [t]hereby" will "be governed by and construed in accordance with the laws of the State of Texas…even if…the substantive or procedural Law of some other jurisdiction would ordinarily or necessarily apply." (Doc. 23-4 at 11.)

The undersigned agrees that the legal effect of the divisive merger of NCC and PulseForge is governed by Texas law. The Court further finds that this is a distinction without a difference, because the result is the same under Texas and Missouri law.

"When a merger takes effect ... all rights, title, and interests to all real estate and other property owned by each organization that is a party to the merger is allocated to and vested, subject to any existing liens or other encumbrances on the property, in one or more of the surviving or new organizations as provided in the plan of merger *without ... any transfer or assignment having occurred*...." Tex. Bus. Orgs. Code Ann. § 10.008(a)(2)(C) (emphasis added). Further, "[t]he Texas Legislature intended by its amendments to the Business Corporations Act that a prohibited transfer would not be implied by merger but would only occur in the event the parties agreed that merger specifically violated an anti-assignment provision." *TXO Prod. Co. v. M.D. Mark, Inc.*, 999 S.W.2d 137, 143 (Tex. App.—Houston [14th Dist.] 1999).

Defendant does not dispute that under Texas law, assets that have been allocated in a merger are not considered to have been transferred or assigned. Defendant also acknowledges that, under Missouri law, a change in corporate structure such as a merger will not typically invoke an anti-assignment clause. Defendant argues that Missouri law "recognizes an exception where the change in corporate structure materially alters the contractual rights and duties of the

non-consenting party."  (Doc. 29 at 12.)  The sole basis of Defendant's argument that this exception exists is language in *Alexander & Alexander, Inc. v. Koelz*, stating that "*if there is no material change in the contract obligations and duties of the employee*, there is no reason for the transfer of the rights from one entity or form to another to work an assignment putatively prohibited by the rule against assignment of personal service contracts."  722 S.W.2d 311, 313 (Mo. App. E.D. 1986) (citing *Sun World Corp. v. Pennysaver, Inc.*, 637 P.2d 1088, 1090-92 (Ariz. App. 1981)) (emphasis added).

The *Alexander* case does not, however, support Defendant's position.  In *Alexander,* the question presented was "whether the surviving company in a statutory merger can enforce covenants not to compete contained in contracts between the merged company and employees of that company."  722 S.W.2d at 312.  The appellate court held that such covenants not to compete were enforceable because a merger *does not* constitute a prohibited assignment:

> Employees assert the employment contract at issue in their case is one for personal services, which, as a general rule, cannot be assigned without the consent of the employee. However, a change in the form in which the employer does business such as the merger in this case, while involving a formal transfer from one entity to another, should not be seen as creating an assignment in violation of the rule against the assignment of personal service contracts. The merger here apparently had no effect on the business of employer, which was merely converted from a wholly-owned subsidiary of surviving corporation to an integral corporate part of surviving corporation. Just as the initial acquisition of one company by another by the purchase of stock would not work a change in the business, neither would the merger, a mere change in the form of ownership from indirect to direct, work such a change in the business. As no assignment could occur in the former, no prohibited "assignment" would occur in the latter.

*Id.* at 312–13 (citation omitted).  The Court noted that if a prohibited assignment were found under these circumstances, "the statutory scheme which allowed such mergers would be seriously disrupted."  *Id.* at 313.

In sum, although the language in *Alexander* cited by Defendant suggests that a "material change" in contract obligations and duties might possibly amount to an assignment, the Court found that *did not occur* in the facts before it involving "a mere change in the form of ownership." *Id.* at 313. Here, similar to *Alexander*, NCC merely changed its corporate form by "spinning out" an already existing entity to form PulseForge. Defendant offers no authority— under Missouri or Texas law—that such a change in corporate structure constitutes an impermissible assignment.

Thus, the Court finds that NCC's allocation of its rights under the Agreement to PulseForge as part of the divisive merger does not constitute an impermissible assignment.

### 3. Conclusion

The Court has found that the Agreement was allocated to PulseForge as part of the divisive merger and that the allocation does not constitute an impermissible assignment. Thus, Brewer has no likelihood of success on the merits of its claim that it cannot be compelled to arbitrate its dispute with PulseForge. Thus, it is unnecessary to discuss the other factors and the Motion for Preliminary Injunction will be denied. *See, e.g., Gelco Corp. v. Coniston Partners,* 811 F.2d 414, 420 (8th Cir.1987) ("The failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction, for the basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.") (internal quotation and alteration omitted).

## B.  Plaintiff's Motion to Compel Arbitration and Stay All Proceedings

PulseForge requests that the Court compel arbitration and stay all proceedings in this action pursuant to Sections 2 through 4 of the FAA.  PulseForge contends that the Agreement contains an unambiguous arbitration provision requiring that any disputes between the parties be decided by binding arbitration.

Brewer responds that the motion should be denied because PulseForge has not established that it is a party to the Agreement.  Brewer further argues that PulseForge's motion to compel is improper and a jury trial is required because PulseForge has invoked Section 4 of the FAA.

### Legal Standard

The FAA requires courts to enforce written agreements to arbitrate disputes and reflects a "liberal federal policy favoring arbitration agreements."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24.  "[C]ontract provisions directing arbitration shall be enforceable in all but limited circumstances."  *Kelly v. Golden*, 352 F.3d 344, 349 (8th Cir. 2003).

Under Section 2 of the Federal Arbitration Act (FAA), "written arbitration agreements [are] valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract."  *Anderson v. Carlisle*, 129 S.Ct. 1896, 1901 (2009).  Section 2 "creates substantive federal law regarding the enforceability of arbitration agreements, requiring courts to place such agreements upon the same footing as other contracts."  *Id.* (quotations omitted).

When reviewing a motion to compel arbitration, a district court asks only (1) whether a valid agreement to arbitrate exists between the parties and (2) whether the specific dispute falls

within the scope of that agreement. *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 783-84 (8th Cir. 2016); *Donaldson Co., Inc. v. Borroughs Diesel, Inc.*, 581 F.3d 726, 729 (8th Cir. 2009) ("A court must grant a motion to compel arbitration if a valid arbitration clause exists which encompasses the dispute between the parties.") (citations omitted). State contract law governs whether the parties have entered into a valid arbitration agreement. *Robinson*, 841 F.3d at 784. In Missouri, a valid contract requires an offer, acceptance, and consideration. *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014).

The party seeking to compel arbitration bears the burden of proving the existence of such an agreement. *Ballou v. Asset Mktg. Servs., LLC*, 46 F.4th 844, 851 (8th Cir. 2022); *Duncan v. TitleMax of Missouri, Inc.*, 607 S.W.3d 243, 249 (Mo. Ct. App. 2020). "The party resisting arbitration bears the burden of showing either that the arbitration provision is invalid or that it does not encompass the claims at issue." *Triplet v. Menard, Inc.*, 42 F.4th 868, 870 (8th Cir. 2022). Under the Federal Arbitration Act ("FAA"), any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Lyster v. Ryan's Fam. Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001).

When a motion to compel arbitration is accompanied by matters outside the pleadings, a court will evaluate the motion under a summary-judgment-like standard, viewing facts in the light most favorable to the non-moving party and drawing all reasonable inferences in their favor. *Nebraska Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 742-43 (8th Cir. 2014). Under the FAA, if the record reveals a material issue of fact as to whether the parties agreed to arbitrate, the court shall proceed summarily to trial on that issue. *Id.*; 9 U.S.C. § 4. However, if

a trial by jury is not demanded by the party opposing arbitration, "the court shall hear and determine such issue."  9 U.S.C. § 4.

**Plaintiff's Motion**

Plaintiff first argues that it properly invoked Section 4 of the FAA and filed a motion to compel.  Plaintiff contends that Defendant would only be entitled to a jury trial if there were a genuine issue of material fact as to the formation of an agreement to arbitrate, and there is no genuine issue of fact here.

### 1. Did PulseForge Properly Invoke Section 4 of the FAA?

Defendant argues that, because PulseForge brought its complaint seeking to compel arbitration pursuant to Section 4 of the FAA, PulseForge's motion to compel arbitration is redundant and improper.

The Eighth Circuit in *Zarecor v. Morgan Keegan & Co., Inc.*, 801 F.3d 882, 889 (8th Cir. 2015), endorsed the general procedure followed by PulseForge.  Specifically, the Court stated that a plaintiff "who pursues arbitration is not required to await the outcome to bring an action in court, and there is an accepted procedure for pursuing arbitration and a lawsuit simultaneously." *Id.*  The Court further noted that a plaintiff "may file suit within the statute of limitations and then seek a stay of the action pending arbitration."  *Id.*

Defendant argues that the motion to compel is redundant, as Plaintiff's Complaint seeks to compel arbitration.  An application to compel arbitration under the FAA is treated as a motion

rather than a pleading. *See* 9 U.S.C. § 6 ("Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions…"). Here, Plaintiff docketed its request to compel arbitration as a Complaint rather than a motion. (Doc. 1.) Plaintiff's subsequent filing of the motion to compel arbitration, while technically duplicative, caused the matter to properly progress as a motion. *See, e.g. SBM Site Services, LLC v. Alvarez*, No. 4:17CV3028, 2018 WL 734170, at *1 (D. Neb. Feb. 6, 2018) ("Because Petitioner erroneously docketed its petition as a complaint, the court directed Petitioner to file a separate motion to compel arbitration in order to progress the matter."). Thus, the filing of the motion to compel is not improper.

Next, contrary to Defendant's assertion, Defendant is not automatically entitled to a jury trial or any other "special processes" under Section 4 of the FAA. (Doc. 30 at 9.) A jury trial or bench trial "is only utilized when there exists a genuine issue of material fact as to the formation of an agreement to arbitrate—trial is not automatically granted to the requesting party." *Ranson v. Securitas Sec. Services USA, Inc.*, No. 1:18-CV-105-SNLJ, 2018 WL 4593707, at *3 (E.D. Mo. Sept. 25, 2018), citing *Nebraska Machinery Co. v. Cargotex Solutions, LLC*, 762 F.3d 737, 743 (8th Cir. 2014) ("if the motions record reveals a material issue of fact, the FAA maintains that the court move summarily to trial"); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2nd Cir. 2012) (holding a jury trial under Section 4 of the FAA is only warranted when there "exists one or more genuine issues of material fact"); *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017) (accord).

### 2. Is there a Genuine Issue of Material Fact?

The Court finds that Defendant is not entitled to a trial under Section 4, because there is no genuine issue of material fact as to "the making of the arbitration agreement." 9 U.S.C. § 4. Defendant does not dispute that Brewer signed the Agreement. Instead, Defendant argues that factual issues exist as to whether the Agreement was assigned to PulseForge by NCC. Defendant contends that PulseForge was not a signatory to the Agreement, Brewer did not consent to the assignment of the Agreement to PulseForge, and that the assignment violated the Agreement's anti-assignment clause.

The Court considered Defendant's arguments in connection with its Motion for Preliminary Injunction. The Court found that the undisputed facts reveal that the Agreement was allocated to PulseForge in the Plan of Merger, and that the allocation does not constitute an impermissible assignment under Texas or Missouri law. Thus, there is no genuine issue of material fact as to the making of the arbitration Agreement.

### 3. Conclusion

Brewer does not dispute that it entered into the 2017 Agreement with NCC, and that the Agreement contains an arbitration provision covering "any dispute regarding th[e] Agreement." (Doc. 29-1 at 10.) Brewer further acknowledges that the instant dispute concerns Brewer's alleged breach of the Agreement by disclosing confidential information that was protected pursuant to that Agreement. Because the Court has found that the evidence before the Court establishes that the Agreement was allocated to PulseForge in the divisive merger, Defendant

has not raised a genuine dispute of material fact that would merit a trial on the issue of contract formation under Section 4 of the FAA.

"The [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Thus, the Court will grant Plaintiff's motion to compel arbitration.

Finally, Defendant argues that Plaintiff's request for a stay must be denied in the event the motion to compel is granted, because "PulseForge seeks to stay the very action that if filed." (Doc. 30 at 13.) The FAA, however, requires that the district court "shall…stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Thus, this action will be stayed pending the outcome of arbitration.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. 10) is **found moot**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Preliminary Injunction (Doc. 12) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel Arbitration and Stay All Proceedings (Doc. 21) is **granted**.

Dated this 23rd day of December, 2025.

s/*Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Page **23** of **23**